UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DANA C.E. SMITH, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:19-cv-00048 SRC |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff Dana C.E. Smith's request for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying Smith's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. The Court reverses the Commissioner's decision and remands this matter back to the Commissioner.

**I.   PROCEDURAL HISTORY**

Smith filed her application for benefits on December 7, 2015. Tr. 201. The Social Security Administration initially denied her application on March 14, 2016. Tr. 114. Smith asked for a hearing before an ALJ on March 30, 2016, and the ALJ held a hearing on April 16, 2018. Tr. 37, 137. The ALJ denied Smith's application in a decision dated August 14, 2018. Tr. 37-49. On March 13, 2019, the Appeals Council denied Smith's request for review. Tr. 1-3. As such, the ALJ's decision stands as the final decision of the Commissioner.

---

[1] After this suit was filed, Saul was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Saul for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

1

**II.     DECISION OF THE ALJ**

The ALJ determined that Smith has not engaged in substantial gainful activity since September 30, 2015, the application date.  Tr. 39.  The ALJ found Smith has severe impairments of "coronary artery disease, status-post stent placement in 2010, ischemic cardiomyopathy, degenerative disc disease of the lumbar spine, obesity, anxiety disorder with panic attacks, affective disorder, and personality disorder."  Tr. 39.  The ALJ noted that although the record indicates Smith has additional diagnoses, they do not have associated functional limitations and appear to be adequately controlled with medication.  *Id*.  The ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 40.  After considering the entire record, the ALJ determined that Smith had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations.  Tr. 42.  She should never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs and balance, stoop, kneel, crouch, or crawl.  *Id*.  She should avoid concentrated exposure to pulmonary irritants and all exposure to unprotected heights.  *Id*.  She is limited to a low-stress working environment with "low stress" defined as requiring only occasional decision making and occasional changes in the work setting.  *Id*.  She is capable of occasional interaction with supervisors and casual and infrequent contact with co-workers, but she should not be required to deal with the public.  *Id*.  She is expected to miss one day of work every three to six months.  *Id*.

The ALJ found Smith is unable to perform any past relevant work.  Tr. 47.  On the date she filed the application, Smith was 44 years old, which is defined as a "younger individual age 18-44."  Tr. 48.  Smith has at least a high school education and is able to communicate in English.  *Id*.  After considering Smith's age, education, work experience, and RFC, the ALJ

2

found that jobs exist in significant numbers in the national economy that Smith can perform including assembler, housekeeper, and mail clerk.  Tr. 48-49.  Thus, the ALJ concluded that Smith "has not been under a disability."  Tr. 49.  Smith appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III.     LEGAL STANDARD

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or

3

mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon

4

the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## IV.   DISCUSSION

### A.   Step Three of the ALJ's Decision

Smith argues the ALJ erred in finding that Smith did not suffer from an impairment equal to listing 12.04 in step three of the analysis. At step three, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If one of the claimant's impairments meets or medically equals one of the listings in the appendix and the duration requirement, then the Social Security Administration deems the claimant disabled, without considering the claimant's age, education, and work experience. *Id*; 20 C.F.R. § 404.1520(d). "The listings define impairments that would prevent an adult, regardless of [her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). "To establish equivalency [with a listed impairment], a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010) (quoting *Sullivan*, 493 U.S. at 531 (emphasis in original)).

In this case, section 12.00 of Part A of the Appendix contains the listing at issue. For listing 12.04, a claimant's mental disorder must satisfy the requirements of both paragraphs A and B, or paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00(A)(2). Paragraph A of each listing includes the medical criteria that must be present in the medical evidence and paragraph B of each listing "provides the functional criteria [the ALJ] assess[es], in conjunction with a rating scale, to evaluate how [the claimant's] mental disorder limits [her] functioning." *Id*. at 12.00(A)(2)(a), (b). To satisfy paragraph B criteria, a claimant's "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id*. at 12.00(A)(2)(b). Paragraph C provides criteria the ALJ uses to evaluate

6

"serious and persistent mental disorders." *Id*. at 12.00(A)(2)(c).  To satisfy paragraph C, a medically documented history of the disorder over a period of two years and evidence that satisfies subparagraphs C1 and C2 must exist.  *Id*.

In Smith's case, the ALJ found that the severity of Smith's mental impairments did not, alone or in combination, meet or medically equal the criteria of listings 12.04 ("Depressive, bipolar, and related disorders"), 12.06 ("Anxiety and obsessive-compulsive disorders"), or 12.08 ("Personality and impulse-control disorders").  Tr. 40.  Smith only challenges the ALJ's determination that her mental impairments do not meet the criteria of listing 12.04.  The ALJ did not discuss whether Smith met the criteria under paragraph A, instead focusing on paragraphs B and C.  Tr. 40-41. For the first (understanding, remembering or applying information), second (interacting with others), and fourth (adaptation and self-management) functional areas under paragraph B, the ALJ found Smith had no more than moderate limitations.  Tr. 40.  For the third functional area (concentrating, persisting, or maintain pace), the ALJ found Smith had no more than a mild limitation.  Tr. 41.  The ALJ relied on Dr. Keith Allen's opinion that found Smith was no more than moderately limited in any area of work-related mental function.  Tr. 41.  Dr. Allen evaluated Smith's mental health history in March 2016.  Tr. 41.  The ALJ gave his opinion significant weight finding it was generally consistent with the medical evidence up to the date of his evaluation.  Tr. 41.

Because Smith did not have at least two "marked" limitations or one "extreme limitation" for mental impairments, the ALJ found the paragraph "B" criteria were not satisfied.  Tr. 41.  She then considered whether the paragraph "C" criteria were satisfied and found that the record did not establish a medically-documented history of a disorder over a period of at least two years.  Tr. 41.

7

Considering all of the evidence in the record, substantial evidence does not exist to support the ALJ's determination that Smith's mental impairments did not, alone or in combination, meet or medically equal the criteria of listings 12.04.  Listing 12.04 applies to "Depressive, bipolar and related disorders."  Under paragraph A, Smith must have medical documentation of either a depressive disorder or a bipolar disorder by meeting certain characteristics.  20 C.F.R. Pt. 404, Subpt. P, App.1, 12.04(A)(1).  To establish a depressive disorder, Smith must show she has five or more of the following:  depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, observable psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, or thoughts of death or suicide.  *Id*.  To establish a bipolar disorder, she must have documentation of three or more of the following:  pressured speech, flight of ideas, inflated self-esteem, decreased need for sleep, distractibility, involvement in activities that have a high probability of painful consequences, or increase in goal-directed activity or psychomotor agitation.  *Id*. at 12.04(A)(2).

Smith's medical evidence suggests she meets five of the criteria for a depressive disorder.  Her records repeatedly show she is depressed, and has diminished interest in almost all activities, sleep disturbances, feelings of guilt or worthlessness, and thoughts of death or suicide.  Tr. 404, 415, 417, 467, 469, 471, 482, 728, 882-84, 898-901, 929-930.  In September 2015, Smith was admitted to a psychiatric hospital.  Tr. 404.  She reported she had thoughts of suicide, thinking of slitting her wrists, and she felt guilty for overspending on her daughter's birthday.  *Id*.  In October 2015, the notes from a psychiatric hospitalization report she has recently been more depressed, fearful, and not wanting to go out and do things.  Tr. 415.  In November 2015, while again hospitalized, she had decreased sleep.  Tr. 482.  In March 2016, she went to the emergency

8

room reporting she had been hearing voices telling her to stab herself. Tr. 929. Her other medical records continue to show similar symptoms. All of this evidence suggests Smith's mental impairments meet the criteria of listing 12.04, paragraph A.

Smith's medical records also indicate she meets the paragraph C criteria. Under paragraph C, Smith's mental disorder must be "serious and persistent" with a medically-documented history of the existence of the mental disorder over a period of at least two years. 20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00(G)(2)(a). Smith must also show her disorder satisfies paragraphs C1 and C2. *Id*.

Since 2015, Smith has been admitted to psychiatric hospitals or reported to the ER for psychiatric symptoms eight times. The first hospitalization occurred in September 2015, when she was admitted for four days. Tr. 404. She had a history of previous hospitalizations, but this was the first time since 2011. *Id*. She had crying spells, thoughts of suicide, and was "nonfunctional." *Id*. At discharge, the doctors diagnosed her with bipolar disorder and as depressed with suicidal ideation. *Id*. They adjusted her medications to address her symptoms. *Id*. Nine days later, she was readmitted to the psychiatric hospital. Tr. 415. She could not stop crying. Tr. 417. The hospital's notes state, "She is not able to focus. She is lying in bed, ruminating, crying, not eating, not sleeping well, afraid to go outside, afraid to be around people, at times appearing confused and possibly even paranoid." *Id*. The doctors adjusted her medications and discharged her after five days. Tr. 417-419.

In late November 2015, she was again hospitalized for five days. Tr. 482. She reported having suicidal thoughts, feeling stressed, sadder, and had decreased sleep. *Id*. She had a plan to overdose on her medications. Tr. 484. Her medications were again adjusted. *Id*. In late February 2016, she reported to the ER with a psychiatric problem. Tr. 898. She reported feeling

9

sad, depressed, and hopeless. *Id*. She had a plan to commit suicide by cutting herself or overdosing on medication. *Id*. She also reported hearing voices telling her to kill herself. Tr. 901. After speaking with a counselor and agreeing to see her psychiatrist the following day, the ER discharged Smith. Tr. 900. Six days later, Smith again reported to the ER with a psychiatric problem. Tr. 882. She again heard voices telling her to stab or cut herself. Tr. 883. The ER doctor determined Smith needed hospitalization and transferred her to a psychiatric hospital the following day. Tr. 884. Smith remained in the hospital for six days and was discharged with diagnoses of bipolar 2 disorder, depressed episode, and severe obsessive-compulsive disorder. Tr. 937. Doctors adjusted her medications and discharged her once she had stabilized. *Id*.

Smith stabilized on her medications for over a year but then in May 2017, she reported to the ER stating she felt depressed and hopeless, and had a plan to commit suicide. Tr. 1293. She began to feel better while in the ER and was discharged after agreeing to follow up with her doctors and report back to the ER if she felt worsening symptoms. Tr. 1296. In July 2017, she was admitted to the psychiatric hospital with increased depressive symptoms and anxiety. Tr. 1314. She remained in the hospital for seven days and was discharged after her medications were adjusted and she stabilized. Tr. 1314-1316. In late January 2018, Smith reported to the ER with a psychiatric problem. Tr. 1540. She reported feelings of anxiety and depression and suicidal ideations for two weeks. *Id*. She also reported feeling hopeless and helpless and that she had hallucinations of her late brother. *Id*.; Tr. 1545. She was admitted to the psychiatric hospital and discharged after seven days. Tr. 1547, 1553.

These records of hospitalizations show that while Smith has periods of stability, she also has periods of deterioration when she must be hospitalized to address her mental disorder. Although she never attempted suicide, she exhibited repeated instances of suicidal ideations,

10

sometimes with specific plans for suicide.  This evidence establishes Smith has a history of her mental impairments for over a period of at least two years and that her disorder is 'serious and persistent."

      Smith must also satisfy the criteria of paragraphs C1 and C2 to qualify as disabled under listing 12.04.  Under paragraph C1, the evidence must show that Smith relies, on an ongoing basis, on "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder."  20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00(G)(2)(b).  Evidence in the record suggests Smith meets this criteria.  In addition to her ongoing hospitalizations to stabilize her after psychiatric episodes, Smith's medical records also show consistent mental health therapy.  She meets regularly with her psychiatrist, Dr. Sayeed, sometimes on a monthly basis and other times every three to four months depending on the severity of her symptoms.  *See* Tr. 463, 465, 467, 469, 471, 728, 875, 942, 967, 969, 1222, 1461, 1463, 1465, 1467, 1469, 1592-94.  Throughout these visits, Dr. Sayeed regularly adjusted her medications to address her mental health needs.  Tr. 464, 466, 468, 470, 472, 729, 876, 1594.  Smith testified she does not see a counselor because she cannot afford one.  Tr. 68.

      Under paragraph C2, Smith's evidence must show that she has "achieved only marginal adjustment."  20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00(G)(2)(c).  This means that her "adaptation to the requirements of daily life is fragile."  *Id*.  The evidence may show that changes or increased demands have led to exacerbation of her symptoms and signs and to deterioration in her functioning.  *Id*.  "[E]vidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time."  *Id*.

11

The medical evidence shows that Smith has episodes of deterioration requiring her to be hospitalized and absent from work.  At the time Smith first was admitted to a psychiatric hospital in September 2015, she had been employed same employer for 11 years.  Tr. 213, 327, 404.  With that hospitalization, Smith lost her job.  Tr. 213-14.  After that, she did not work.  Tr. 217-22.  Her repeated hospitalizations suggest that her "adaptation to the requirements of daily life is fragile."  Her September 2015 hospitalization occurred after increased demands on her life due to her daughter's birthday.  Tr. 404.  As established above, Smith's medical records also show that she is often unable to get out of bed and cannot function for days at a time.  Smith has periods of adjustment and stabilization and then periods of deterioration.  The ALJ's opinion focuses solely on the periods of stabilization without fully considering the periods of deterioration.  Smith testified she has eight to ten bad days in a month where she cannot get out of bed.  Tr. 70.  Smith's husband testified that she used to take care of everything – the bills, the laundry, making dinner.  Tr. 84.  Now, he and their daughter often do the laundry, help with the cooking, and they no longer see friends and family.  Tr. 84-85.  All of this evidence supports Smith's argument that she meets the criteria of paragraph C2.

The ALJ did not discuss whether Smith meets the criteria of paragraph A at all, and only addressed the criteria of paragraph C in a conclusory fashion.  In step four of her analysis, the ALJ includes more detail of Smith's numerous hospitalizations but never addresses those hospitalizations and the symptoms that led to those hospitalizations in regard to whether she meets the criteria of paragraph A or C in step three.  For paragraph C, the ALJ simply states, "the record does not establish a medically documented history of a disorder over a period of at least two years, with evidence of both (1) medical treatment, psychosocial support(s) or a highly structured setting(s) that is ongoing and diminishes the signs and symptoms of the mental

12

disorder, and (2) marginal adjustment." Tr. 41.  As the Court describes in the preceding paragraphs, the record suggests Smith meets the criteria of paragraphs A and C.

When analyzing the medical record to determine if paragraph B criteria are met, the ALJ focused on Smith's December 2015 Function Report, her ER visit in March 2016, and the report of Dr. Allen, who evaluated Smith in March 2016 and found no evidence of paragraph A, B, or C was present.  Tr. 40-41.  The ALJ does not consider Smith's subsequent hospitalizations and mental health treatment.  *Id*.  She notes that Smith was negative for psychiatric symptoms in January and October 2017, but fails to mention her ER visit in May 2017 when Smith planned to overdose on medication, or her seven-day stay at a psychiatric hospital in July 2017.  As currently written, substantial evidence does not support the ALJ's decision.  When considering the entire record, not just the limited records the ALJ mentions in her report, Smith's mental disorder appears to meet listing 12.04.  20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00(A)(2).  Thus, the Court reverses and remands this matter, and instructs the ALJ to consider whether Smith meets the criteria of paragraphs A and C for listing 12.04, and to address all of the evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order. A separate judgment will accompany this Memorandum and Order.

So Ordered this 31st day of August, 2020.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**